UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| QUINCY MUTUAL FIRE INSURANCE COMPANY, | * * * |
| Plaintiff, | * * |
| v. | * Civil Action No. 18-cv-11868-ADB * |
| ATLANTIC SPECIALTY INSURANCE COMPANY, | * * * |
| Defendant. | * |

# MEMORANDUM AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL

BURROUGHS, D.J.

Plaintiff Quincy Mutual Fire Insurance Company ("Quincy") brings this action pursuant to Massachusetts General Laws Chapter 93A ("Chapter 93A"), § 11 to recover its costs for defending a third-party complaint that Defendant Atlantic Specialty Insurance Company ("Atlantic") directed its insured to file against Quincy. See [ECF No. 1-1 ("Complaint" or "Compl.")]. Quincy asserts that the underlying third-party complaint, which was filed in the Massachusetts Superior Court for Barnstable County (the "Superior Court"), Richards v. MacDougalls' Cape Cod Marine Services, Inc., No. 1472CV00632 (Mass. Super. Ct.) (the "Richards Litigation"), brought claims in bad faith at a time when Atlantic knew those claims were without merit. Now pending before the Court are Quincy's motion to compel discovery and Atlantic's motion for summary judgment. [ECF Nos. 17, 19]. For the reasons discussed herein, Atlantic's motion for summary judgment [ECF No. 19] is **DENIED**, and Quincy's motion to compel [ECF No. 17] is **GRANTED IN PART** and **DENIED IN PART**.

I.      FACTS[1]

On December 26, 2014, Joyce Richards initiated the Richards Litigation against MacDougalls' Cape Cod Marine Services, Inc. ("MacDougalls") to recover for personal injuries that she allegedly suffered on June 3, 2014 while working as an employee of Boston Yacht Sales ("BYS") at MacDougalls' boatyard. [ECF No. 20 ("Atlantic Facts") ¶¶ 2–4]. BYS was in the business of selling boats from a sales office that it had leased at MacDougalls' boatyard. [ECF No. 20-12 at 2]. Richards fell from a ladder while inspecting a potential BYS client's boat in a building at the boatyard that was located approximately 90 yards from BYS's sales office. [Id. at 5]. At the time of Richards' injury, MacDougalls was insured by Atlantic, and BYS was insured by Quincy. Compl. ¶¶ 3, 24. Despite Atlantic's allegations to the contrary, MacDougalls was not an insured entity under the policy BYS obtained from Quincy, nor did the Quincy policy otherwise cover Richard's injuries. Id. ¶ 6.

On March 12, 2015, at Atlantic's direction, MacDougalls requested that BYS and Quincy defend and indemnify MacDougalls against Richards' claims. Atlantic Facts ¶¶ 1, 10. Quincy refused to indemnify MacDougalls and explained that MacDougalls was not listed on BYS's insurance policy, an indemnity provision in BYS's lease was void and unenforceable, and in any event, Richards' injuries were not incurred on the property that BYS had leased from MacDougalls. Compl. ¶¶ 9, 14–16. Quincy claims that Atlantic never carried out a reasonable investigation and that an investigation would have revealed that Quincy owed no obligation whatsoever to MacDougalls. Id. ¶¶ 7–8. On April 17, 2015, at Atlantic's direction,

---

[1] The following facts are drawn primarily from Atlantic's statement of material facts, [ECF No. 20 at 2–6 ("Atlantic Facts")], and from the memorandum and decision of Judge Nickerson of the Superior Court on the parties' cross motions for summary judgment in the Richards Litigation, [ECF No. 20-12]. Some facts are also drawn from the Complaint because Atlantic has filed for summary judgment without engaging in the discovery process. See [ECF Nos. 17, 18].

2

MacDougalls filed a third-party complaint against BYS and Quincy. Compl. ¶ 20; Atlantic Facts ¶¶ 12–13. Quincy asserts that the claims were "false and baseless." Compl. ¶ 23.

Quincy responded by filing a counterclaim, alleging in part that MacDougalls violated Chapter 93A by asserting groundless indemnification and defense claims that relied on an indemnification provision in BYS's lease that was unenforceable and void. [ECF No. 20-12 at 21]. On June 7, 2016, the Superior Court entered summary judgment in favor of Quincy on MacDougalls' claims. Atlantic Facts ¶ 16; see generally [ECF No. 20-12]. The Superior Court denied MacDougalls' motion for summary judgment on Quincy's Chapter 93A counterclaim, concluding that there was "a dispute of material fact as to whether MacDougalls' demand for coverage in reliance on the void indemnification provision constituted an unfair and deceptive trade practice." [ECF No. 20-12 at 21]. Although the Superior Court recognized that "alleged unfair practices conducted during the course of litigation do not support [Chapter 93A] liability, Quincy's claim [was] based on conduct that occurred prior to the parties' litigation." [Id. at 22 (citation omitted)].

On August 7, 2018, Quincy filed this case in the Superior Court of Norfolk County, and on August 30, 2018, Atlantic timely removed the case to this Court. [ECF No. 1]; Compl. at 4. Quincy seeks to recover litigation costs totaling more than $100,000 that it incurred in the Richards Litigation. Atlantic Facts ¶ 19; [ECF No. 1-2].[2] Atlantic was not a party to the Richards Litigation, and Quincy therefore chose to initiate this case rather than proceeding within the Richards Litigation. See Mass. R. Civ. P. 14. On September 21, 2018 Atlantic filed

---

[2] At a July 9, 2019 conference at which the parties argued this motion, Quincy's counsel stated that the litigation costs likely make up 98 percent of its damages. Quincy's opposition to the motion for summary judgment did not dispute Atlantic's assertion that the alleged damages are "limited to defense costs." Atlantic Facts ¶ 19.

3

an answer. [ECF No. 10]. The Court held a scheduling conference on October 23, 2018 and ordered discovery to be completed by June 29, 2019. [ECF No. 15]. Quincy served interrogatories and requests for production on Atlantic in February 2019, but rather than engaging in the discovery process, Atlantic responded that it intended to move for summary judgment. [ECF No. 18 at 1]. Quincy filed a motion to compel discovery on March 14, 2019, [ECF No. 17], and Atlantic filed its motion for summary judgment on March 26, 2019, [ECF No. 19]. Timely oppositions were filed as to both motions. [ECF Nos. 21, 22].

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution might affect the outcome of the case under the controlling law. . . . A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernandez v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015). "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file ... demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). Once the movant takes the position that the record fails to make out any

4

trialworthy question of material fact, "it is the burden of the nonmoving party to proffer facts sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013).

In reviewing the record, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

Although Federal Rule of Civil Procedure 56 allows a motion for summary judgment "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), the Court is mindful that Atlantic has not yet produced documents, responded to interrogatories, or otherwise engaged in the discovery process in a meaningful manner. Accordingly, for the purposes of the instant motion, the Court will assume the truth of the allegations in the Complaint concerning Atlantic's failure to undertake a reasonable investigation of Richards' claims. See [Mot. to Compel, ECF No. 17 ("At a conference held on March 14, 2019, Defendant's counsel advised

Plaintiff's counsel that the Defendant would not be answering the interrogatories or producing the documents requested . . . .")].[3]

III.     SUMMARY JUDGMENT DISCUSSION

Quincy brings a single claim against Atlantic for violating Chapter 93A, § 11, which allows actions by businesses that suffer a loss "as a result of the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice . . . ." Mass. Gen. Laws ch. 93A, § 11. Chapter 93A "was designed 'to encourage more equitable behavior in the marketplace and impose liability on persons seeking to profit from unfair practices.'" Linkage Corp. v. Trs. of Bos. Univ., 679 N.E.2d 191, 208 (Mass. 1997) (quoting Poznik v. Massachusetts Med. Prof'l Ins., 628 N.E.2d 1, 4 (Mass. 1994)). "[A]

---

[3] The Court could have denied the motion for summary judgment with less discussion of the legal questions given Atlantic's failure to produce discovery and the presence of disputed material facts. In the interest of moving this litigation forward and avoiding unnecessary relitigation of legal questions, however, the Court assumes the well-pleaded allegations in the Complaint as it would have on a motion pursuant to Federal Rules of Civil Procedure 12(b)(6) or 12(c), which would have been more appropriate at this stage of the litigation. If the parties file any further motions for summary judgment in this case, they shall comply with the following order:

> Any summary judgment motion shall include a separately filed Statement of Undisputed Facts which details, in numbered paragraphs, the material facts that the moving party contends are undisputed and entitle the movant to judgment as a matter of law. Oppositions to summary judgment shall include a separate filing setting forth the responding party's response to each numbered paragraph in the movant's Statement of Undisputed Facts. For every material fact asserted in the Statement of Undisputed Facts, the responding party must, following a full quotation of each asserted fact, either (1) admit the fact, or (2) dispute the fact with a concise explanation and appropriate citations. The responding party may also set forth, in sequentially numbered paragraphs, any additional facts which the responding party contends preclude summary judgment. Each stated fact shall cite the source relied upon, including the page of any document, or page and line number of any deposition, to which reference is made. Every material fact that the responding party does not dispute with appropriate citations will be deemed admitted.

chapter 93A claimant must show that the defendant's actions fell 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous,' and resulted in 'substantial injury … to competitors or other business [persons].'" Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (quoting Quaker State Oil Ref. Corp. v. Gamty Oil Co., 884 F.2d 1510, 1513 (1st Cir. 1989)). "In the context of disputes among businesses, where both parties are sophisticated commercial players, the 'objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce.'" Ora Catering, Inc. v. Northland Ins., 57 F. Supp. 3d 102, 110 (D. Mass. 2014) (quoting Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)); see also VMark Software, Inc. v. EMC Corp., 642 N.E.2d 587, 595 (Mass. App. Ct. 1994) ("To be held unfair or deceptive under c. 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness.").

Although Chapter 93A provides broad remedies, it is directed only at unfair or deceptive acts that arise "in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). Trade or commerce includes "the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed" and also includes "any trade or commerce directly or indirectly affecting the people of this commonwealth." Mass. Gen. Laws ch. 93A, § 1(b). Trade or commerce "has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those engaged in the business of

7

insurance." Morrison v. Toys "R" Us, Inc., 806 N.E.2d 388, 392 (Mass. 2004); see also Wheatley v. Mass. Insurers Insolvency Fund, 988 N.E.2d 845, 850 (Mass. 2013).

Insurance companies may be liable under Chapter 93A where they engage in unfair claim settlement practices, such as misrepresentations of pertinent facts or failing to implement reasonable standards for the investigation of claims, but these statutory requirements do not provide a "blanket guarantee to consumers that claims against companies with which they do business, even claims in which liability is clear, will be settled before going to court." Morrison, 806 N.E.2d at 393; see also Mass. Gen. Laws ch. 176D, § 3(9). Chapter 93A does not apply to "a situation . . . where the parties are merely engaged in a good faith dispute regarding the meaning of a contract." Spence v. Berkshire Life Ins., 561 F. Supp. 2d 126, 130 (D. Mass. 2008). "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a [Chapter] 93A claim is made." Duclersaint v. Fed. Nat. Mortg. Ass'n, 696 N.E.2d 536, 540 (Mass. 1998). Notably, whereas Chapter 93A, § 9 specifically permits claims for violations of Massachusetts General Laws Chapter 176D ("Chapter 176D"), § 3(9), which prohibits "unfair claim settlement practice" in the insurance business, Chapter 93A, § 11 does not reference Chapter 176D. Courts have therefore held that "a violation of chapter 176D is not automatically actionable under chapter 93A, § 11." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins., 220 F.3d 1, 9 (1st Cir. 2000); see also John Beaudette, Inc. v. Sentry Ins. A Mut. Co., 94 F. Supp. 2d 77, 122 (D. Mass. 1999) (Chapter 176D "does not apply to section 11 plaintiffs who must proceed under the language of section 11."). Nevertheless, a violation of Chapter 176D that is unfair or oppressive may give rise to a Chapter 93A, § 11 claim. See Ora Catering, 57 F. Supp. 3d at 110; see also Fed. Ins. v. HPSC, Inc., 480 F.3d 26, 35 (1st Cir. 2007) ("a violation of General Laws chapter 176D, § 3, which defines unfair

claim settlement practices in the insurance industry, is evidence of an unfair business practice under chapter 93A, § 2, which would give rise to a cause of action under chapter 93A, § 11"); Brazas Sporting Arms, 220 F.3d at 9 ("conduct that violates [Chapter] 176D may independently be an unfair trade practice actionable under [Chapter] 93A, § 11"); VMark Software, 642 N.E.2d at 595.

Atlantic argues that summary judgment is appropriate here because (1) the parties are insurers who never had a business relationship, (2) litigation activity is not within the meaning of "trade or commerce" as used by Chapter 93A, (3) statements and conduct of attorneys are immune from Chapter 93A liability, and (4) the parties' genuine dispute over the meaning of lease provisions and insurance policy terms cannot be a basis for Chapter 93A liability. [ECF No. 20 at 8–20]. The Court finds these arguments unavailing.

Atlantic's first argument, that the parties never had a business relationship, is unpersuasive because Chapter 93A allows actions where an individual or company is injured as a result an insurer's unfair or deceptive behavior, irrespective of whether the plaintiff is the defendant's named insured. See Clegg v. Butler, 676 N.E.2d 1134, 1138 (Mass. 1997) ("[W]e reject [the argument] that, when the plaintiff is a third party rather than the insurer's insured, the insurer owes no duty to the third-party claimant under this statute . . . ."). Atlantic relies on language in Szalla v. Locke, 657 N.E.2d 1267, 1269 (Mass. 1995), for the proposition that Chapter 93A "requires that there be a commercial transaction between a person engaged in trade or commerce with another person engaged in trade or commerce." Szalla's requirement of a "commercial transaction" precludes Chapter 93A claims brought against the plaintiff's business partner because such disputes are "intra-enterprise," "purely private disputes and are not 'commercial transaction[s] ... in the sense required by [Chapter] 93A.'" Linkage Corp., 679

9

N.E.2d at 206 & n.33 (quoting Szalla, 657 N.E.2d at 1270). This case does not concern an intra-enterprise transaction, and the requirement for a commercial transaction does not preclude claims like those brought here. See, e.g., Cont'l W. Ins. v. Preferred Mut. Ins., No. 14-CV-14226-MGM, 2016 WL 6434081, at *1–2 (D. Mass. Oct. 27, 2016) (denying summary judgment motion as to Chapter 93A claim brought by insurance company for its attorney's fees in underlying lawsuit brought by the defendant insurance company).

Atlantic also argues that, in general, "no commercial relationship exists where the parties only contact occurs in the context of litigation." John Beaudette, 94 F. Supp. 2d at 121. An exception to that rule, applicable here, is that an insurance company may be liable for litigation expenses that flow from its failure to conduct a reasonable investigation and effectuate prompt, fair, and equitable settlements once its liability has become clear. See Fed. Ins., 480 F.3d at 36 (affirming judgment and awarding attorney fees in Chapter 93A, § 11 action against insurance company); Rental Prop. Mgmt. Servs. v. Hatcher, 97 N.E.3d 319, 330 n.9 (Mass. 2018) ("[L]itigation conduct can constitute a violation of [Chapter] 93A where the defendant is engaged in the business of insurance.").[4] The parties engaged each other prior to the third-party complaint as insurance companies engaged in the business of resolving claims outside litigation, and Quincy's complaint is primarily targeted at liability based on Atlantic's purported failure to comply with its statutory obligations before the third-party complaint was filed. See generally

---

[4] Atlantic argues, in connection with its assertion that the parties never transacted business, that Quincy cannot show causation. [ECF No. 20 at 12]. The Complaint adequately alleges that Quincy's litigation expenses were the result of Atlantic's failure to comply with its statutory obligations to investigate and make reasonable efforts to settle the claims at issue. [ECF No. 1-1 ¶¶ 17–29]. At this time, Quincy cannot be expected to show a more developed theory of causation when Atlantic has refused to engage in the discovery process.

Compl. Therefore, this action is not barred due to the supposed lack of a pre-litigation relationship.

Atlantic's second argument, that litigation activity is not within Chapter 93A's definition of "trade or commerce," is closely related to its first argument and is likewise unpersuasive. Atlantic cites to the Massachusetts Supreme Judicial Court's decision in Morrison v. Toys "R" Us, Inc., 806 N.E.2d 388, 392 (Mass. 2004), for the proposition that Chapter 93A "has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation . . . ." [ECF No. 20 at 12–13]. Atlantic's quotation of Morrison, however, ends with an ellipsis and thereby omits the words: "with the statutory exception as to those engaged in the business of insurance." Morrison, 806 N.E.2d at 392. Because Atlantic is an insurance company, its reliance on the rule that "ordinary defendants" that are "not an insuring entity subject to standards imposed by [Chapter] 176D, § 3(9)" are not subject to liability for bad faith settlement practices is misplaced. Id. at 392–93.

Atlantic's third argument, that statements and conduct of attorneys are immune from Chapter 93A liability, fares no better. "Under Massachusetts law, an attorney's statements are absolutely privileged 'where such statements are made by an attorney engaged in his function as an attorney whether in the institution or conduct of litigation or in conferences and other communications preliminary to litigation.'" Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) (quoting Sriberg v. Raymond, 345 N.E.2d 882, 884 (Mass. 1976)). The privilege creates a "general bar to civil liability based on the attorney's statements" considering "'[t]he public policy of permitting attorneys complete freedom of expression and candor in communications in their efforts to secure justice for their clients.'" Id. (quoting Sriberg, 345 N.E.2d at 884). Although where the privilege attaches it is "absolute," Doe v. Nutter, McClennen & Fish, 668

11

N.E.2d 1329, 1332 (Mass. App. Ct. 1996), whether it applies "is determined on a case-by-case basis, after a fact-specific analysis" that considers the attorney's statements or conduct and their relationship with the underlying judicial proceeding, Giuffrida v. High Country Inv'r, Inc., 897 N.E.2d 82, 98 (Mass. App. Ct. 2008); see also Correllas v. Viveiros, 572 N.E.2d 7, 13 (Mass. 1991).

Here, Atlantic asserts that "every alleged malfeasance in the Complaint can be attributed to a statement of defense counsel pertinent to the Richards Litigation." [ECF No. 20 at 14]. As discussed supra, the Complaint is premised upon Atlantic's failure to carry out a proper investigation and otherwise comply with its statutory obligation before directing its insured to file the third-party complaint. It is unlikely that the immunity Massachusetts provides attorneys extends to immunize Atlantic, but the issue is fact-specific and need not be definitively resolved at this stage.[5]

Atlantic's fourth and final argument for summary judgment is that the conduct at issue does not rise to the level of an unfair or deceptive practice as required for a Chapter 93A, § 11 claim given the parties' genuine dispute over the meaning of the lease and the insurance policy at

---

[5] Atlantic also argues that Judge Nickerson's summary judgment memorandum and order in favor of Quincy precludes Quincy from seeking to recover its litigation costs where Judge Nickerson held that "unfair practices conducted during the course of ligation do not support [Chapter] 93A liability." [ECF No. 20-12 at 22]. The Court does not understand Quincy to be asserting liability based on Atlantic's litigation practices. Rather, Quincy's liability argument appears premised upon Atlantic's failure to investigate and to pursue a reasonable settlement of Richards' claims before the third-party complaint was filed. Although the better course may have been for Quincy to file its claim against Atlantic in the Richards Litigation, Judge Nickerson did not clearly hold that litigation expenses could not be a basis for damages where those expenses were incurred due to pre-litigation violations of Chapter 93A. Because there was no judgment in the Richardson Litigation that precludes the claim and damages asserted here, Quincy is not pursuing an impermissible second bite at the apple. See Mani v. United Bank, 79 Mass. App. Ct. 1127, 949 N.E.2d 948 (Mass. App. Ct. 2011) ("litigants have one bite at the apple on their claims").

issue in the Richards Litigation. [ECF No. 20 at 14–20]. These arguments may well succeed, but Atlantic's assertion that the third-party complaint was founded on a good faith legal dispute conflicts with the Complaint's allegation that Atlantic knew, or should have known, that Quincy and BYS were not liable for Richards' injuries. Quincy's ability to respond to Atlantic's argument may be significantly strengthened by discovery, and the Court will deny the motion for summary judgment on this issue pending the completion of discovery. In the Richards Litigation, the Superior Court held that there was "a dispute of material fact as to whether MacDougalls' demand for coverage in reliance on the void indemnification provision constituted an unfair and deceptive trade practice." [ECF No. 20-12 at 21]. Substantially the same question is presented here, and the Court declines to resolve this issue without allowing Quincy the benefit of discovery. See Fed. R. Civ. P. 56(d). Therefore, Atlantic's motion for summary judgment will be denied.

## IV. MOTION TO COMPEL

Quincy served interrogatories and requests for production on February 7, 2019. Atlantic declined to respond to the discovery requests in hopes that this action would be resolved on its motion for summary judgment. Because this Order denies the motion for summary judgment, Atlantic's argument that discovery should be stayed pending the Court's decision is moot.

Atlantic also argues that the interrogatories and requests for production seek discovery of documents and information protected by the attorney-client privilege and the work product doctrine. [ECF No. 21 at 5]. "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The privilege "rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to

13

be carried out." Id. (quoting Trammel v. United States, 445 U.S. 40, 51 (1980)). Whereas the attorney-client privilege "protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice," XYZ Corp. v. United States (In re Keeper of Records), 348 F.3d 16, 22 (1st Cir. 2003), the work product doctrine encompasses "work done by an attorney in anticipation of … litigation from disclosure to the opposing party," Blattman v. Scaramellino, 891 F.3d 1, 4 (1st Cir. 2018) (quoting In re Grand Jury Subpoena (Custodian of Records, Newparent, Inc.), 274 F.3d 563, 574 (1st Cir. 2001)). The work product doctrine does not extend, however, to "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes," United States v. Textron Inc. & Subsidiaries, 577 F.3d 21, 30 (1st Cir. 2009), even where those materials are "prepared by a lawyer and reflect 'legal thinking,'" Marquez-Marin v. Lynch, No. 3:16-CV-01706-JAW, 2018 WL 1358214, at *6 (D.P.R. Mar. 15, 2018) (citing Fed. R. Civ. P. 26).

Here, the interrogatories and requests for production clearly demand information within the attorney-client privilege and work product doctrine to the extent neither has been waived. For example, Quincy requests the "complete paper and digital file concerning the" Richards Litigation. [ECF No. 21-2 at 2]. That being said, where a defendant asserts an advice-of-counsel defense, as Atlantic has here, see [ECF No. 10 at 6], the assertion waives the attorney-client privilege and work product doctrine "as to documents discussing the advice in question." Saint-Gobain/Norton Indus. Ceramics Corp. v. Gen. Elec. Co., 884 F. Supp. 31, 34 (D. Mass. 1995); see also XYZ Corp., 348 F.3d at 24 ("When such a defense is raised, the pleader puts the nature of its lawyer's advice squarely in issue, and, thus, communications embodying the subject matter of the advice typically lose protection."); Micron Separations, Inc. v. Pall Corp., 159 F.R.D. 361,

363 (D. Mass. 1995) ("[A]n assertion of the defense of advice of counsel results in a waiver of the attorney-client privilege and work product protection.").

The issues at the core of this case are whether Atlantic directed its insured to file the third-party complaint without attempting to comply with Chapter 176D or with knowledge that its claims were false and baseless. The conduct and work product of Atlantic's counsel during the litigation is most likely irrelevant to those issues. Further, Judge Nickerson already determined that the litigation conduct could not be a basis for the substantially similar Chapter 93A claim that Quincy brought against MacDougalls in the Richards Litigation.[6] To the extent Atlantic intends to rely on its counsel's actions or advice to demonstrate either reliance on the advice of counsel or its compliance with Chapter 176D, the privilege and work product protections for that advice and conduct have, to the extent they ever existed, been waived. Atlantic has demonstrated that Quincy has requested documents from after April 17, 2015 that likely implicate the attorney-client privilege and work product doctrine and which likely need not be produced. If Atlantic intends to withhold any relevant documents from before April 17, 2015, it must serve a privilege log with sufficient information to demonstrate that its privilege claim over any withheld document has not been waived. The Court will not require Atlantic to provide a privilege log for documents that post-date April 17, 2015 considering the amount in controversy and the burden that logging such documents would impose. Post April 17, 2015

---

[6] Even accepting that litigation conduct can serve as the basis for a Chapter 93A claim against an insurance company in some circumstances, the Court finds it implausible that the litigation conduct in the Richards Litigation rose to the level necessary to support a Chapter 93A claim, particularly given that Judge Nickerson, who presided over that litigation and doubtless had superior familiarity with it, rejected the argument that the litigation conduct there was a proper basis for a Chapter 93A claim in that case. [ECF No. 20-12 at 22].

documents must nevertheless be produced to the extent they relate to Atlantic's pre-April 17, 2015 knowledge of the viability of its claims or compliance with Chapter 176D.

## V. CONCLUSION

The motion for summary judgment, [ECF No. 19], is **DENIED** with leave to renew at the conclusion of discovery. The motion to compel is **GRANTED IN PART** and **DENIED IN PART**. Atlantic shall endeavor to provide responses to the interrogatories and produce documents responsive to the requests for production within thirty (30) days of this Order. Atlantic may maintain claims of attorney-client privilege and work product protection for information that does not relate to its compliance with Chapter 176D and is irrelevant to its advice-of-counsel defense, but it must explain and log any assertions of those protections that relate to communications or work product before April 17, 2015. All discovery shall conclude by October 25, 2019. Any dispositive motions shall be filed by November 15, 2019. Oppositions to dispositive motions shall be filed in the time period provided by the local rules. See L.R., D. Mass. 56.1 ("within 21 days after the motion is served"). If the parties do not anticipate filing motions for summary judgment, they shall notify the Court's courtroom clerk no later than November 1, 2019 to arrange a statue conference. The parties shall jointly notify the Court if they wish to have this case referred to the Court's mediation program. Considering the dynamics of this case and the amount at issue, the Court is willing to stay discovery if the parties consent to mediation.

**SO ORDERED.**

July 29, 2019 /s/ Allison D. Burroughs  
ALLISON D. BURROUGHS  
U.S. DISTRICT JUDGE